463 A.2d 414

CENTRAL PENNSYLVANIA SAVINGS ASSOCIATION, Appellee,

v.

CARPENTERS OF PENNSYLVANIA, INC., Appellant.

Appeal of The COMMONWEALTH NATIONAL BANK.

Supreme Court of Pennsylvania.

Argued May 26, 1983.

Decided July 8, 1983.

18

Robert C. Spitzer, Harrisburg, for appellant.

Patrick T. Ryan, Philadelphia, Guy William Schlesinger, Shamokin, for appellee Central Pa. Sav. Assn.

Before ROBERTS, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

ZAPPALA, Justice.

Appellant, Commonwealth National Bank, (hereafter Bank) and Appellee, Central Pennsylvania Savings Association, (hereafter Savings and Loan) both made loans to Carpenters of Pennsylvania (hereafter Carpenters) for the construction of dwelling units in the Borough of Steelton, Dauphin County. Savings and Loan agreed on November

30, 1973, to lend $1,289,500 for a fifty unit project. The loan was reduced to $1,221,500 at closing. It was secured by a construction mortgage against the land, which was recorded on December 3, 1973. The Savings and Loan advanced $1,211,103.87 on the mortgage. The Bank's loan was for the construction of a twenty-eight unit project on an adjacent tract.

Carpenters defaulted on both loans. Both the Bank and the Savings and Loan entered judgments. The Bank entered judgment in the amount of $778,411.13 on November 6, 1974. The Savings and Loan entered judgment in the amount of $817,010.19 on January 6, 1976, approximately 14 months after the entry of the junior lien judgment of the Bank. The Savings and Loan issued a writ of execution directing a sheriff's sale of the land covered by its mortgage. The Savings and Loan bid $812,000 at the sale. The Bank had previously brought a deficiency judgment proceeding in which the court credited it with $178,656.10. The sheriff's schedule of distribution indicated that the Savings and Loan would receive all of the proceeds of the sale. The Bank filed exceptions to the schedule of distribution, claiming that its judgment lien took priority over that part of Savings and Loan's mortgage lien that related to advances made after the November 6, 1974, the date of the entry of the Bank's judgment. The Bank argued that as of November 6, 1974, Carpenters had been in default on its payments to the Savings and Loan, that as a result of the default, the Savings and Loan's advances to Carpenters were voluntary, and that therefore, the Bank's judgment lien took priority over the lien created by the Savings and Loan's subsequent advances. The Court of Common Pleas of Dauphin County sustained the exceptions and ordered the Savings and Loan to pay the Bank $149,220.32 with interest from the proceeds of the sheriff's sale.

The Savings and Loan appealed to the Superior Court. The Superior Court reversed the Court of Common Pleas and held that the Savings and Loan was contractually obligated to make the advances in question, that the ad-

vances related back to the date of the original mortgage, and further that the Savings and Loan's lien took priority over the Bank's judgment lien, 298 Pa.Super. 250, 444 A.2d 755 (1982). The court rejected the contention raised by the Bank in a cross-appeal that the Court of Common Pleas improperly reduced its judgment lien by $11,993.01. We granted a Petition for Allowance of Appeal to determine the question of the priority of the liens. The Bank continues to press the issue raised by its cross-appeal in the Superior Court.

The evidence indicates that pursuant to the mortgage contract, the Savings and Loan deposited the entire amount of the loan into an escrow account. Carpenters was required to pay interest on the money as it was advanced. The Savings and Loan was entitled to declare the balance due and payable and proceed to judgment and foreclosure whenever the balance was due and payable. Interest was paid in a timely fashion through April, 1975. No payments were made for May or June. Carpenters was, therefore, in default on July 1. On account of the default and pursuant to the terms of the agreement, the Savings and Loan notified Carpenters of the default on July 2, 1975 and became mortgagee in possession.

Construction was being done by the Draco Construction Company. The Savings and Loan was required to advance funds to Draco for construction as long as all work was satisfactorily completed. The Savings and Loan's inspection showed that the work was satisfactorily completed and that Draco met all of its obligations.

It further appears that the Bank and the Savings and Loan engaged in a cooperative effort to minimize their losses. The Bank encouraged the Savings and Loan to complete the project and agreed to release the judgment lien against each unit as it was sold. The Savings and Loan continued to advance funds to complete and sell the units. The Bank released its liens as the units were sold until December 18, 1975, but would not continue to do so after that date. All of the units had been completed by then. As

to the ultimate commitment made by the Savings and Loan, all but $3,066.74 had been expended, but this amount was paid three days later for previously incurred expenses. The parties do not agree on how much money the Savings and Loan advanced after the November 6, 1974, attachment of the Bank's judgment lien. The Court of Common Pleas determined that the amount was $167,213.33.

The Bank claims that its judgment lien takes priority over the lien created by Savings and Loan's subsequent advances. It relies on a line of cases dating back to *Terhoven v. Kerns,* 2 Pa. 96 (1845). This Court held in that case that where the holder of a prior encumbrance makes additional advances on the basis of that encumbrance, the additional advances constitute a new debt, which is subordinate to an intervening encumbrance. For similar holdings, *see, Bank of Montgomery County's Appeal,* 36 Pa. 170 (1860), *Appeal of the Bank of Commerce,* 44 Pa. 423 (1863).

■ In *Housing Mortgage Corporation v. Allied Construction, Inc.,* 374 Pa. 312, 97 A.2d 802 (1953), this Court held that the *Terhoven* Rule applies when the senior mortgagee makes further advances after notice of the junior lien when not required to do so. However, when the senior mortgagee is required under the loan agreement to make the further advances, such advances relate back to the date of the original mortgage and take priority over the junior lien. The Savings and Loan was not required to make advances to Carpenters, as Carpenters was in default. However, the Savings and Loan was required, as noted *supra,* to make advances to Draco Construction as Draco was proceeding with construction in the proper manner. Draco had the right to compel payment, being an intended third party beneficiary of the loan agreement, *Clardy v. Barco Construction Co., Inc.,* 205 Pa.Super. 218, 208 A.2d 793 (1965). The Savings and Loan made the advances for the purpose of completing construction. We find that these advances were obligatory in view of Draco's interest.

The Savings and Loan also argues that its advances should take priority because they were made to protect its interest. The advances were made in order to complete construction, as that would allow the housing units to be sold and provide the best chance for the Savings and Loan to recover on its mortgage. A mortgagee in possession of real property is entitled to take all reasonable measures to protect its lien, *Most Excellent Assembly of the Artisans Order of Mutual Protection v. Superb Realty Co.,* 353 Pa. 256, 44 A.2d 584 (1945). A mortgagee in possession might be held liable for failure to maintain the property. See, *Sansotta v. City of Pittsburgh,* 330 Pa. 199, 199 A. 164 (1938). By acting to complete construction, the Savings and Loan reduced the risk of deterioration of the property.

The Savings and Loan further claims that the Bank should be estopped from claiming that its judgment lien is senior to the Savings and Loan's subsequent advances, having participated in the scheme under which the advances were made. We do not find it necessary to reach this claim. Neither will we reach the issue raised by the cross-appeal.

We will consider one further issue raised by the Bank, i.e., whether the Savings and Loan's appeal to the Superior Court was timely. The Court of Common Pleas entered an Order sustaining the Bank's exceptions to the sheriff's schedule of distribution of January 25, 1979. The Savings and Loan filed exceptions to the Order on February 5, 1979. The court dismissed the exceptions on May 29, 1979. The Savings and Loan filed notice of appeal to the Superior Court on June 26, 1979. In order for an appeal to be timely, notice thereof must be filed within thirty days after entry of the Order appealed from, Rule of Appellate Procedure 903(1). The Bank contends that the thirty-day time period for appeal ran from the January 25, 1979 Order. We do not agree. The Savings and Loan's filing of exceptions was proper under Rule of Civil Procedure 1038(d), which provides that:

"Within ten (10) days after notice of the filing of the decision, exceptions may be filed by any party to the

decision or any part thereof, to rulings on objections to evidence or to any other matters occurring during the trial. Each exception shall set forth a separate objection precisely and without discussion. Matters not covered by exceptions are deemed waived unless, prior to final judgment, leave is granted to file exceptions raising these matters. No motion for a new trial, for judgment non obstante veredicto, in arrest of judgment or to remove a nonsuit may be filed."

The tenth day after the January 25, Order was February 4, 1979. As that day was a Sunday, the filing of exceptions on February 5 was timely. In view of the provision that "matters not covered by exceptions are deemed waived", we hold that the filing of exceptions is a prerequisite for appeal and only those matters covered by exceptions may be raised on appeal. The Superior Court has so held in a number of cases, e.g., *Zvonik v. Zvonik,* 291 Pa.Super. 309, 435 A.2d 1236 (1981). See also *E.J. McAleer Co., Inc. v. Iceland Products, Inc.,* 475 Pa. 610, 381 A.2d 441 (1977), where we held that the trial court acted properly in not allowing exceptions to be filed beyond the prescribed time. This is similar to the rule for criminal cases, under which matters to be raised on appeal must first be raised in post-verdict motions, Rules of Criminal Procedure 1123(a), *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975). We find that the Savings and Loan appealed to the Superior Court in a timely fashion by filing notice of appeal within thirty days after the May 29, 1979, Order. Where the rules provide for the filing of exceptions to a decision of the Court of Common Pleas, the time for appeal begins to run when the court enters an Order disposing of the exceptions.

The Order of the Superior Court is affirmed. The case is remanded to the Court of Common Pleas of Dauphin County for proceedings consistent with this opinion.

NIX, J., did not participate in the consideration or decision of this case.