J-A04007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARK BACHMANN, ELLEN M. BACHMANN, ROBERT GAZY, LINDA GAZY, DANIEL SMITH, DARRIN JAVORNICKY, PHILLIP ALLEN, DENNIS TUNNEY, RAND TUNNEY, WILLIAM THOMAS, CHRISTY THOMAS, REGIS ROHDE, MARJORIE ROHDE, JOSEPH MULSHIN, DEBORAH MULSHIN, RICHARD DADY, THOMAS DADY, SHIRLEY FRANKOSKY, RODNEY ZABISH, MICHAEL LEICHTY, GARY LEE STALEY, DAVID BACHNER, TOMMIE LOU BACHNER, WALLACE WOODHOUSE, DEBRA WOODHOUSE, PAUL SCHUMACHER, SUSAN SCHUMACHER, CHRISTOPHER MCGARY, FRANKLIN PLEIL, CITIZENS BANK OF PENNSYLVANIA, JEREMY LAZZARI, ERIN LAZZARI, AND MICHAEL GOETTLER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| EQT PRODUCTION COMPANY, INC., | |
| Appellant | No. 229 WDA 2014 |

Appeal from the Order January 8, 2014
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2012-488

BEFORE:  BOWES, WECHT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 14, 2015**

_____

[*]  Retired Senior Judge assigned to the Superior Court.

EQT Production Company, Inc. ("EQT") appeals from the January 8, 2014 order granting plaintiffs herein summary judgment. We reverse and remand.

On January 27, 2012, Mark and Ellen M. Bachmann instituted this action to quiet title, for ejectment, and for a declaratory judgment against EQT. The Bachmanns sought a declaration that EQT, as successor in interest to Equitable Gas Company ("Equitable"), no longer owned the oil and gas rights in their property located at 26 Rainey Road Extension, Eighty Four, Pennsylvania. The Bachmanns' property consists of approximately forty-nine acres and comprises a portion of a 133 acre plot of land subject to an oil and gas lease owned by EQT.

EQT's oil and gas rights derive from a February 28, 1940 sale by Jennie G. Myers to Equitable of the oil and gas rights to the 133 acres of land that she owned. In the February 28, 1940 document, which was duly recorded, Equitable was granted the oil and gas rights to 133 acres for a period of one year from March 9, 1940, and thereafter "as long after the commencement of operations as said land is operated for the exploration or production of gas or oil, or as gas or oil is found in paying quantities thereon . . . ." Lease, 2/28/40, at 2 ("Myers Lease."). The document also provided for certain royalty payments.

In this lawsuit, the Bachmanns claimed that the lease was "void and of no legal effect, and has expired by its own terms" since EQT "produced no gas or oil under said Lease" and had made no royalty payments required by

that document. Complaint, 1/27/12, at ¶ 7. The complaint failed to aver that EQT did not conduct any operations for the exploration or production of gas or oil. EQT filed an answer, new matter and counterclaim, to which the Bachmanns responded.

The Bachmanns filed a motion for summary judgment. Two days later, EQT filed a motion to either compel the joinder of indispensable parties or, alternatively, for dismissal of the action. EQT noted that the Bachmanns sought a declaration that the Myers Lease was void, the lease encompassed 133 acres of land, the land was subdivided, and other parties owned parcels that were subject to the lease. EQT set forth that any declaration that the Myers Lease was void would affect the royalty rights of all people currently owning part of the subdivided 133 acres, that the Bachmanns had been supplied the names of all the owners of the subdivided plot, and that the Bachmanns neglected to join those parties as plaintiffs. EQT's motion for joinder was granted, and thirty-one plaintiffs were added as additional plaintiffs in an amended complaint in quiet title, ejectment, and declaratory judgment.

The amended complaint, which was filed on July 23, 2013, averred that no royalties were paid to any plaintiff and that no gas was produced on land owned by any plaintiff. As with the first complaint, the amended complaint failed to contain any averments that there were no operations conducted by EQT for the exploration or production of gas on the 133 acres.

On August 20, 2013, EQT filed an answer to the amended complaint, a new matter, and a counterclaim. It averred that the Myers Lease remained valid and in full legal effect since the land subject to its terms had been "operated for the exploration or production of gas or oil" or, alternatively, that gas or oil had been found in paying quantities on the 133 acres. Answer, New Matter, and Counterclaim, 8/20/13, at ¶ 64. EQT further averred that the Bachmanns had not received royalties since they had failed to notify EQT, as required by the terms of the lease, that they purchased part of the original Myers land. In new matter and its counterclaim, EQT alleged that operations for the exploration and production of natural gas commenced in 1941 on the Myers land and had continued since that time. *Id*. at ¶¶ 79, 80, 94, 95.

Before answering the new matter and counterclaim to the amended complaint, the Bachmanns,[1] on September 11, 2013, filed a motion for summary judgment. They set forth the following. A gas well known as API # 37-125-00713 was drilled on their property, and no production from that well occurred from December 2006 to December 2010. That well was the only one drilled on the 133 acres to support the lease. During discovery, the Bachmanns had requested that EQT "designate the appropriate person to

_____

[1] After joining the additional thirty-one plaintiffs, the Bachmanns, who were still represented by the same lawyer, referred to those parties as *et al*. in their subsequent pleadings. Thus, we consider these filings as initiated primarily by the Bachmanns.

discuss operations and maintenance of API No. 37-125-00713," and EQT designated Robert Gum. Supplement to Plaintiffs' Brief in Support of Plaintiffs' Motion for Summary Judgment Counterclaim, 11/8/13, at ¶ 3. At his deposition, Mr. Gum related that the only maintenance performed on that well was the placement of a meter on it in November 2010. In response to the Bachmanns' request "to designate an appropriate representative of EQT to testify concerning production of the subject well [API No. 37-125-00713], EQT offered Debbi Dominguez." *Id*. at 4. Ms. Dominguez stated that she was unaware of any activity, other than the placement of the meter, performed on the well. Ms. Dominguez also provided a production history for API No. 37-125-00713. That history was included in the record and indicated that the well in question produced no oil or gas from December 31, 2006, to December 1, 2010. Gas was produced from that well starting again in December 2010.[2]

EQT responded to the September 11, 2013 motion for summary judgment filed by the Bachmanns. It noted that the motion was premature

_____

[2] On appeal, Appellees incorrectly assert that EQT designated representatives for purposes of establishing production and operations "on the Jenny Myers Lease from December 2006 through November 2010." Appellees' brief at 7. The motion for summary judgment refutes this assertion and sets forth that the designated representatives were only familiar with operations and production relating to the well on the land. There is no indication in the record that either Mr. Gum or Ms. Dominguez were asked to be designated representatives as to operations conducted for exploration of gas or as to operations conducted for the production of gas on the 133 parcel subject to the Myers Lease.

since the pleadings were not closed and that there was no documentation to support the factual averments contained therein. EQT also argued the Bachmanns failed to meet their burden of proof in several material respects. First, the motion discussed only actual gas and oil production, made no allegation that EQT failed to conduct operations for the exploration of gas, and made no averments that EQT did not perform operations for the production of gas.

Finally, EQT noted that it had not had the opportunity to take necessary discovery regarding the thirty-one plaintiffs joined on July 29, 2013. EQT stated that it intended to take discovery from those new plaintiffs on various topics, including, but not limited to, their receipt and acceptance of payments for the production of gas from EQT pursuant to the Myers Lease. On November 11, 2008, the Bachmanns replied to EQT's counterclaim and new matter and submitted, in a supplement, the necessary depositions and documents to support the factual averments in their motion for summary judgment.

This appeal followed the grant of the Bachmanns' motion for summary judgment and the trial court's declaration that the Myers Lease was no longer valid due to a lack of the production of gas for four years on the well drilled under the Myers Lease. EQT raises these averments on appeal:

> 1. Whether the trial court erred in granting summary judgment to the plaintiffs where the plaintiffs Motion for Summary Judgment was filed without evidentiary support and before the pleadings were closed, and was granted before EQT

had the opportunity to take discovery from the thirty-one new plaintiffs added as parties by the plaintiffs' Amended Complaint;

2. Whether the trial court erred in granting summary judgment to the plaintiffs where (a) the plaintiffs' Motion for Summary Judgment was based on the lack of production of oil and/or gas from the leased premises, (b) the lease at issue remained in effect as long as operations were conducted for the exploration and/or production of oil and/or gas or oil and/or gas was found in paying quantities and (c) issues of fact existed as to whether operations for the exploration and/or production of oil and/or gas were continuously conducted on the leased premises.

Appellant's brief at 5.

We agree with both of EQT's contentions and therefore reverse the grant of summary judgment in favor of the plaintiffs herein. Initially, we outline our standard and scope of review.

Our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo.*

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Reinoso v. Heritage Warminster SPE LLC*, 2015 WL 161934, 3 (Pa.Super. 2015) (*en banc*) (citation omitted).

Where plaintiffs are granted summary judgment, it is necessary for them prove that there was no genuine issue of material fact regarding each element of their cause of action and that they are entitled to judgment as a matter of law. *Long v. Yingling*, 700 A.2d 508, 514-15 (Pa.Super. 1997). In *Long*, we reversed the grant of summary judgment in favor of a defendant, and, on appeal, the plaintiff requested that summary judgment be granted to her. We outlined all the elements of her cause of action and noted that there was a genuine issue of material fact as to the existence of one of those elements. We thus denied plaintiff summary judgment.

Herein, EQT answered the Bachmanns' motion for summary judgment by pointing out that the evidence produced by the Bachmanns failed to establish that there was no issue of material fact regarding certain "facts essential to the cause of action" pled in the complaint. Pa.R.C.P. 1035.3 (a)(2). Rule 1035.3 pertains to the burden of the responding party in the summary judgment setting and provides in pertinent part:

> (a) Except as provided in subdivision (e), the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying
>
> > (1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, **or**

> (2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced.

Pa.R.C.P. 1035.3(a) (emphasis added).

EQT thus satisfied its burden, did not rest on its pleadings, and pointed out that the Bachmanns had not produced evidence that there was no genuine issue of material fact as "to facts essential to the cause of action" in quiet title. Specifically, EQT noted that there was no indication that it failed to conduct operations for the exploration of gas and did not conduct operations for the production of gas. In its answer, new matter, and counterclaim, EQT specifically averred that it conducted such activities and had not forfeited its lease.

The trial court, echoing the Bachmanns' arguments on appeal, justified its ruling by indicating that, since there was no genuine issue of material fact regarding the lack of production of gas and oil in paying quantities for four years on well API No. 37-125-00713, the lease was void. In light of the express language of the lease in question, we cannot agree that summary judgment can be premised on this evidence. Since the Bachmanns sought to terminate the oil and gas lease in question, it was their burden of proof to establish that the lease was no longer in effect. **T.W. Phillips Gas and Oil Co. v. Jedlicka**, 964 A.2d 13 (Pa.Super. 2008). EQT, as successor in interest to Equitable, continues to own the oil and gas rights to the 133 acre Myers parcel "as long after the commencement of operations as said land is **operated for the exploration or production** of gas or oil, **or** as gas or oil

is found in paying quantities thereon . . . ." Myers Lease (emphases added). This language is clear and unequivocal.

The Bachmanns and the trial court overlooked the emphasized language and focused solely upon the language regarding production of gas or gas in paying quantities. Summary judgment was premised solely upon the lack of production of oil and gas from December 31, 2006 to December 1, 2010 on the well drilled on the acreage pursuant to the lease. The Bachmanns, as moving parties in a summary judgment setting, had to establish that there were no operations for the exploration of gas or oil and no operations for the production of gas or oil. While the Bachmanns characterize it as burdensome to require them to prove these facts and to depose the other parties subject to the lease, we cannot change the pertinent law. It was their burden of proof to establish that the lease was void, and it was their burden of proof to establish that they were entitled to summary judgment.

As expressly indicated in their motion for summary judgment, the Bachmanns asked for EQT to designate persons to discuss operations, maintenance, and production as to **the well drilled under the lease**. Critically, their summary judgment motion failed to indicate that they requested EQT to designate the appropriate person to discuss any operations related to exploration of gas on the 133 acres and to designate the appropriate person to discuss any operations related to the production of gas on the 133 acres.

- 10 -

Nothing in this adjudication should be construed as holding that the lease remains valid. Our ruling herein is premised solely upon the premature nature of the request for summary judgment. The Bachmanns can cure the present deficits by demanding that EQT designate representatives to establish that it conducted operations for the exploration or production of gas. We simply cannot permit a shortcut approach as to the termination of an oil and gas lease. This lease does not require actual gas production to remain effective, and summary judgment was premised solely on the lack of actual gas production.

Since it complied with Pa.R.C.P. 1035.3(a)(2), EQT did not, contrary to the Bachmanns' position on appeal, have to produce evidence of operations for the exploration of gas on the 133 acres or evidence of operations for the production of gas on the acreage. *See* Appellees' brief at 16-17. Appellees failed to secure the proper designated representatives on those subject matters and focused solely upon the lack of production on the well drilled under the lease.

It is clear that the Bachmanns failed to establish that there was no genuine issue of material fact that the Myers Lease was void under its express terms. Thus, summary judgment was improperly entered.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/14/2015</u>